WILLIE L. PARKER, CORPORATION COUNSEL
CITY OF NEWARK-DEPARTMENT OF LAW
920 BROAD STREET, ROOM 316
NEWARK, NEW JERSEY 07102
Attorney for Defendants
City of Newark
Former Police Director Garry McCarthy

By:  Wilson D. Antoine, Esq.
     Assistant Corporation Counsel
     Telephone: (973) 733-3114
     Facsimile: (973) 733-5394
     antoinew@ci.newark.nj.us

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SACHA NEGRON, | : |
| | : |
| Plaintiff, | : Civ. No. 2:16-cv-03965-KSH-CLW |
| | : |
| | : Hon. Katharine S. Hayden, U.S.D.J. |
| v. | : |
| | : Hon. Cathy L. Waldor, U.S.M.J. |
| CITY OF NEWARK et al., | : |
| | : **Motion Day: February 6, 2017** |
| Defendants. | : |
| | : ORAL ARGUMENT REQUESTED |
| | : |

**BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS CITY OF NEWARK AND GARRY MCCARTHY**

                              WILLIE L. PARKER
                              CORPORATION COUNSEL
                              Attorneys for Newark
                          Defendants


WILSON D. ANTOINE, ESQ.
On the Brief

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................... iii

SUMMARY OF ARGUMENT........................................... 1

STATEMENT OF FACTS............................................ 3

PROCEDURAL HISTORY........................................... 6

LEGAL ARGUMENT............................................... 8

  POINT I

  THIS ACTION SHOULD BE DISMISSED
  FOR LACK OF PERSONAL JURISDICTION
  AND INSUFFICIENCY OF SERVICE PURSUANT
  TO 12(b)(2), (4,) AND (5) ................................... 8

  POINT II

  PLAINTIFF'S CLAIMS ARE TIME-BARRED ......................... 18

  POINT III

  COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM ................. 25

  POINT IV

  THE NEWARK DEFENDANTS ARE ENTITLED TO IMMUNITY ............. 32

  POINT V

  COMPLAINT FAILS TO STATE A PRIMA FACIE CLAIM ............... 36

CONCLUSION.................................................. 40

## TABLE OF AUTHORITIES

**Federal Cases**

Aleynikov v. McSwain,
 2016 WL 3398581 (D.N.J. June 15, 2016) .................. 26, 44

Anspach v. City of Phila.,
 503 F.3d 256 (3d Cir. 2007) ................................. 30

Argueta v. U.S. Immigration & Customs,
 643 F.3d 60 (3d Cir. 2011) ............................. 33, 34

Ashcroft v. Iqbal,
 556 U.S. 662 (2009) ........................................ 29

Ayres v. Jacobs & Crumplar. PA.,
 99 F.3d 565 (3d Cir. 1996) ............................. 10, 11

Barts v. Joyner,
 865 F.2d 1187 (11th Cir.1989) .......................... 28, 43

Bell Atlantic Corp. v. Twombly,
 550 U.S. 544 (2007) ........................................ 29

Bennett v. City of Atl. City,
 288 F. Supp. 2d 675 (D.N.J. 2003) ......................... 38

Carter v. City of Philadelphia,
 181 F.3d 339 (3d Cir. 1999) ............................... 40

Mauls v. Chain,
 239 F.Supp.2d 486 (D.N.J. 2002) .......................... 25

Chavarriaga v. New Jersey Dep't of Corr.,
 806 F.3d 210 (3d Cir. 2015) ........................... 33, 34

Cikraji v. Vickers,
 2010 WL 554438 (S.D. Ohio Feb. 16, 2010) ................. 13

Connelly v. Lane Const. Corp.,
 809 F.3d 780 (3d Cir. 2016) ............................... 29

Dique v. New Jersey State Police,
 603 F.3d 181 (3d Cir. 2010) ............................... 26

Duncan v. Office of Passaic Cty. Prosecutor,
 2012 WL 1079471 (D.N.J. Mar. 30, 2012) ................... 39

Fitchik v. New Jersey Transit Rail Operations, Inc.,
  873 F.2d 655 (3d Cir.1989) .................................. 38

Fowler v. UPMC Shadyside,
  578 F.3d 203 (3d Cir. 2009) ................................. 29

Harley v. Warren,
  2016 WL 6133830 (D.N.J. Oct. 20, 2016) ..................... 24

Hector v. Watt,
  235 F.3d 154 (3d Cir. 2000) ............................ 28, 43

In re Campbell,
  105 B.R. 19 (B.A.P. 9th Cir. 1989) ......................... 13

In re Raphael,
  238 B.R. 69 (D.N.J. 1999) .................................. 39

Ingram v. Twp. of Deptford,
  858 F. Supp. 2d 386 (D.N.J. 2012) ..................... 22, 25

Institutional Investors Group v. Avaya, Inc.,
  564 F.3d 242 (3d Cir. 2009) ................................ 21

Insurance Corp. of Ireland, Ltd. v.
  Comnaunie des Bauxites de Guinee,
  456 U.S. 694 (1982) ........................................ 10

Joyce v. City of Sea Isle City,
  2008 WL 906266 (D.N.J. Mar. 31, 2008) ..................... 24

Khorozian v. McCullough,
  186 F.R.D. 325 (D.N.J. 1999) ............................... 13

Matheny Sch. & Hosp. v. Borough of Peapack & Gladstone,
  2014 WL 4215453 (D.N.J. Aug. 25, 2014) .................... 25

Mathies v. Silver,
  450 F. App'x 219 (3d Cir. 2011) ....................... 17, 18

Mattern v. City of Sea Isle,
  131 F. Supp. 3d 305 (D.N.J. 2015) .......................... 37

Mattern v. City of Sea Isle
  2016 WL 4446066 (3d Cir. Aug. 24, 2016) ................... 37

Mattson v. Aetna Life Ins. Co.,
  124 F. Supp. 3d 381 (D.N.J. 2015) .......................... 41

McCurdy v. Am. Bd. of Plastic Surgery,
  157 F.3d 191 (3d Cir. 1998) ..................... 11, 17, 18, 19

McGuire v. Twp. of Waterford,
  2007 WL 598666 (N.J. Super. Ct. App. Div. Feb. 28, 2007) .... 24

MCI Telecommunications Corp. v. Teleconcepts, Inc.,
  71 F.3d 1086 (3d Cir. 1995) ..................... 11, 14, 15, 16

Michaels v. State of N.J.,
  955 F. Supp. 315 (D.N.J. 1996) ............................ 26

Mobilio v. Div. of Law & Pub. Safety of New Jersey,
  413 F. App'x 520 (3d Cir. 2011) ........................... 42

Monell v. Dep't of Soc. Servs. of City of New York,
  436 U.S. 658 (1978) ....................................... 37

Myers v. Am. Dental Ass'n,
  695 F.2d 716 (3d Cir. 1982) ............................... 10

Neitzke v. Williams,
  490 U.S. 319 (1989) ................................... 20, 21

Omni Capital Int'l v. Rudolf Wolff & Co.,
  484 U.S. 97 (1987) ........................................ 12

Pelzer v. City of Philadelphia,
  656 F. Supp. 2d 517 (E.D. Pa. 2009) ....................... 34

Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.,
  106 F. Supp. 2d 761 (D.N.J. 2000) ......................... 21

Rankines v. Meyrick,
  2016 WL 545134 (D.N.J. Feb. 10, 2016) ..................... 43

Rode v. Dellarciprete,
  845 F.2d 1195 (3d Cir. 1988) .............................. 33

Ruhrgas AG v. Marathon Oil Co.,
  526 U.S. 574 (1999) ....................................... 10

Sharrar v. Felsing,
  128 F.3d 810 (3d Cir.1997) ................................ 42

Syncsort Inc. v. Sequential Software, Inc.,
  50 F. Supp. 2d 318 (D.N.J. 1999) .......................... 21

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
  551 U.S. 308(2007) ........................................ 21

Tennessee v. Lane,
  541 U.S. 509 (2004) ........................................ 39

In re Camden Police Cases,
  2011 WL 3651318 (D.N.J. Aug. 18, 2011) ..................... 38

Thomas v. Cumberland Cty.,
  749 F.3d 217 (3d Cir. 2014) ................................ 37

Tilli v. Ford,
  566 F. App'x 105 (3d Cir. 2014) ........................... 36

Trafton v. City of Woodbury,
  799 F. Supp. 2d 417 (D.N.J. 2011) ......................... 26

Veal v. United States,
  84 F. App'x 253 (3d Cir. 2004) ............................ 11

Wallace v. Kato,
  549 U.S. 384 (2007) ................................... 26, 27

Werner v. Werner,
  267 F.3d 288 (3d Cir. 2001) ............................... 30

Wright v. City of Phila.,
  409 F.3d 595 (3d Cir. 2005) ............................... 42

**State Cases**

Beauchamp v. Amedio,
  164 N.J. 111 (2000) ....................................... 25

Feinberg v. State D.E.P.,
  137 N.J. 126 (1994) ....................................... 25

Freeman v. State,
  347 N.J. Super. 11 (App. Div. 2002) ................... 27, 43

K.D. v. Bozarth,
  313 N.J. Super. 561 (App. Div. 1998) ...................... 32

Myers v. Medford Lakes Bd. of Educ.,
  199 N.J. Super. 511 (App. Div. 1985) ...................... 23

Sanducci v. City of Hoboken,
  315 N.J. Super. 475 (App. Div. 1998) ...................... 42

Seidel v. Greenberg,
  108 N.J. Super. 248 (Ch. Div. 1969) .................. 27, 43

Wildoner v. Borough of Ramsey,
 162 N.J. 375 (2000) ........................................ 41

**Statutes**

42 U.S.C. § 1983.............. 1-2, 20-23, 25, 27, 29, 32-35, 37

N.J.S.A. 2A:15-5.10......................................... 23

N.J.S.A. § 59:2-10.......................................... 36

N.J.S.A. § 59:8-8(b)........................................ 26

N.J.S.A. § 59:9-2(c)........................................ 25

N.J.S.A. §§ 59:8-3, 59:8-8.................................. 25

TCA, or § 1983.............................................. 29

TCA, § 1983................................................. 24

**Rules**

Fed. R. Civ. P. 4.............................. 1, 8, 11-14, 17

NJ Ct. R. 4:4-4............................................. 12

## SUMMARY OF ARGUMENT

Defendants City of Newark (the "City") and Garry McCarthy (collectively the "Newark Defendants") move to dismiss with prejudice the complaint ("Complaint") of Plaintiff Sacha Negron ("Plaintiff") (1) for lack of personal jurisdiction, insufficiency of service of process, and insufficiency of process itself; and (2) for failure to state a claim upon which relief can be granted.

Although Federal Rule of Civil Procedure 4 required Plaintiff to validly serve the Newark Defendants with valid process within 90 days, (1) Plaintiff failed to attempt any service for over four months; (2) Plaintiff was granted an extension but faxed process, instead of properly serving it; (3) Plaintiff's process was defective as she served an expired summons; and (4) Plaintiff appears to have never attempted service of Mr. McCarthy at all. The statute of limitations has now passed. Accordingly, this matter should be dismissed with prejudice for insufficiency of service and process and lack of personal jurisdiction.

The Complaint also fails to state a claim for which relief could be granted. Plaintiff alleges that in 2013 NJ State Troopers and Federal US Marshals, acting on the intel of a confidential informant, unlawfully searched her home, falsely arrested her, unlawfully interrogated her, and maliciously prosecuted her, resulting in a violation of 42 U.S.C. § 1983 ("§ 1983"), the New Jersey Civil Rights Act (the "NJCRA"), and the New Jersey Tort Claims Act (the "TCA"), and entitling her to punitive damages.

All of these claims are without merit as to the Newark Defendants. Preliminarily, neither TCA, NJCRA, nor § 1983 allow punitive damages against the Newark Defendants as a matter of law. More importantly, there are absolutely no well-pleaded allegations as to the Newark Defendants. Mr. McCarthy was not employed with the City at the time of the incident Plaintiff complains of; he was in Chicago. Similarly, there are no well-pleaded allegations that the City or any of the City's employees were involved in the events of the Complaint.

Even if the Newark Defendants could be perceived as somehow being connected to this case, (1) the Newark Defendants would be immune from liability as agents of the State of New Jersey; (2) the Newark Defendants would be separately immune from vicarious liability claims as municipal/public entities; (3) all of the claims are time-barred by the applicable two-year statute of limitations; (4) the TCA claims are time-barred by the Plaintiff's failure to file a notice of claim within the applicable 90-day period; and (5) the search, arrest, interrogation, and prosecution of Plaintiff are not actionable because the few well-pleaded allegations of the Complaint show that those actions were supported by probable cause, in the form of a reliable identification by a confidential informant. Stated simply, the Complaint should be dismissed with prejudice as a matter of law.

## STATEMENT OF FACTS

For the purposes of this motion only, the City assumes, without admitting, the truth of the allegations of the Complaint to the extent that they do not conflict with documents and information that are judicially noticeable or integral thereto. The Complaint covers a time-period from 2012 through June 30, 2014. Compl. ¶¶ 15-22. The claims arise out of one or more of three incidents alleged in the Complaint to be illegal: a search of Plaintiff's home, Plaintiff's arrest, and Plaintiff's prosecution. Compl. ¶¶ 15-22.

As an initial matter, Plaintiff alleges that Mr. McCarthy was "at all times relevant the Director of the City of Newark Police Department." Compl. ¶ 11. Mr. McCarthy left the Newark Police Department to work in Chicago in 2011, and he was Superintendent for the Chicago Police Department through the end of 2015. Certification of Wilson D. Antoine, Esq. ("Certif. Antoine"), dated January 9, 2017, at ¶ 3, Ex. A. He was not the Director for the City of Newark during the events of the Complaint.

Notably, no Newark Police officers (excluding fictitious defendant supervising officers) have been identified or named in the Complaint, even as fictitious defendants. Rather, Plaintiff asserts claims against the Newark Defendants, Miguel Holguin and J.A. Burke (troopers with the New Jersey State Police), Joseph Fuentes (superintendent for the New Jersey State Police), the United States of America (for being in charge of the United States

Marshals Service), Attorney General Loretta Lynch (as the overseer of the United States Marshals Service), and various fictitious defendants (who represent supervisors within the Newark Police Department and troopers, marshals, and supervisors with the New Jersey State Police and United States Marshals Service) (collectively the "Defendants").  Compl. ¶¶ 4-14, 18.

### Conspiracy to Stop Weapons Trafficking

In particular, Plaintiff alleges, "upon information and belief," that in the autumn of 2012, Defendants commenced a weapons trafficking investigation in the City of Newark.  Plaintiff alleges that on some unspecified date, presumably in late 2012 and/or early 2013, a confidential informant ("CI") provided Defendants with information concerning Plaintiff's involvement with weapons sales/trafficking.  Plaintiff alleges that this information would later turn out to be false.  Nonetheless, Defendants allegedly utilized the CI to conduct a controlled weapons transaction with Plaintiff.  Plaintiff alleges that this was a case of mistaken identity as she was not involved in any such transaction.  Compl. ¶¶ 15-16.

### Unlawful Search By Unidentified Law Enforcement Personnel

Plaintiff further alleges that in March/April 2013, "Defendants" without a search warrant forcibly entered Plaintiff's home and conducted an unlawful search of her premises, but the search yielded no contraband.  Plaintiff does not identify any of the troopers or marshals involved, how many troopers or marshals

were involved, whether she was present, or the affiliation of those
troopers or marshals.  She simply alleges that "Defendants"
unlawfully searched her premise, suggesting that the Attorney
General for the United States, supervising officers for the City,
and other managerial personnel personally burst into her home
looking for incriminating evidence.  Compl. ¶ 17.

**Unlawful Arrest and Interrogation by US Marshals from Irvington**

Plaintiff alleges that on April 9, 2013, (presumably while she
was in Newark) unidentified U.S. Marshals arrested her, imprisoned
her in Irvington, and unlawfully interrogated her.  Plaintiff
further alleges that she had been taking her children to school at
the time of arrest, and the children were left unsupervised by the
U.S. Marshals.  Compl. ¶ 18.

Plaintiff spent 9 days in Essex County Jail until she could
post bail in the amount of $100,000.  Compl. ¶ 20.  There is no
allegation as to how or why the interrogation was improper or
unlawful, except the allegation that Plaintiff was ultimately
innocent.  More pertinently, there is no allegation that the City
of Newark or its police officers were in any way involved in this
arrest or the subsequent interrogation in Irvington.

**Malicious Prosecution by NJ State Troopers**

Plaintiff alleges that on or about April 9, 2013, State
Trooper Holguin charged Plaintiff with several crimes under
complaint-warrant # W-2013-006729-0714, related to the unlawful
sale of firearms.  There is no allegation that any Newark police

officer was involved in the filing of the criminal complaint. Compl. ¶ 19.

On November 22, 2013, the Essex County Grand Jury returned a 4-count indictment against Plaintiff relating to the unlawful sale of firearms. Again, there is no allegation that the City or its employees tampered with, testified before, or otherwise influenced the Grand Jury to indict Plaintiff. Compl. ¶ 21.

On June 30, 2014, the Essex County Prosecutor's Office's motion, to dismiss all charges against Plaintiff, was granted. Compl. ¶ 22.

## PROCEDURAL HISTORY

Plaintiff filed the Complaint exactly two years later on Thursday, June 30, 2016. Compl. (Dkt. 1). However, at no point, either before or after the criminal proceedings against Plaintiff were dismissed, did she file a notice of claim with the City relating to her arrest, interrogation, search, or prosecution. Certification of Sulaiman Shittu ("Certif. Shittu"), dated January 6, 2017. Nor does the Complaint reference the filing of a notice of claim.

On Friday, July 1, 2015, the clerk's office issued a summons to be served on the Defendants. (Dkt. 2). Approximately four months and seven days later on November 7, 2016, a Notice of Call for dismissal was issued by the Clerk's office pursuant to Federal Rule of Civil Procedure 4(m) and Local Civil Rule 41.1(a), establishing a return date for November 10, 2016. (Dkt. 3). The

notice indicated that the action had "been pending for more than 90 days, without any proceeding having been taken therein." (Dkt. 3). The notice further indicated that "unless sufficient reason to the contrary is shown, the case will be dismissed for lack of prosecution in accordance with Local Civil Rule 41.1(a)." (Dkt. 3). Finally, the notice required Plaintiff to show "good cause by affidavit setting forth what good faith efforts to prosecute this action have been made and what further efforts are intended" before the return date. (Dkt. 3).

On November 10, 2016, Plaintiff's counsel filed a Certification. (Dkt. 4). Plaintiff's counsel explained that the four-month delay was due to no fault of Plaintiff. (Dkt. 4). Plaintiff's counsel intimated that because of personal issues, lack of staff, and case load, he was overwhelmed, implying that he forgot about the case but was otherwise able to properly prosecute the case. (Dkt. 4). Plaintiff's counsel further stated that the interest of justice supported continuation of the action because (1) "the New Jersey State Police falsely accused Plaintiff of illegal weapons trafficking"; (2) they entered Plaintiff's home and conducted an unlawful search of her home, yielding no weapons; and (3) the US Marshals Service "falsely arrested her and wisked [sic] her away to the New Jersey State Police Barracks in Irvington, New Jersey." (Dkt. 4) (emphasis added). The Certification made no reference to the City or any City employees. (Dkt. 4).

On November 15, 2016, the Court declined to dismiss the case

for lack of prosecution.    (Dkt. 5).    In particular, the Court ruled, "[b]ased on counsel's certification in response to the Notice of Call for dismissal Pursuant to L.Civ.R. 41.1 (a), the plaintiff shall effect service no later than December 5, 2016." (Dkt. 5).

On December 5, 2016, at approximately 1:49 pm, Plaintiff faxed to the City a summons, addressed to the City only, and the Complaint. Cert. Antoine ¶ 4, Ex. B. The summons indicated that it was issued on July 1, 2016. Cert. Antoine ¶ 4, Ex. B.

Apparently on account of Plaintiff's failure to file proof of service, the Court issued a second order on December 15, 2016, requiring Plaintiff to "file RETURN OF SERVICE no later than 12/23/2016." (Dkt. 6).   No return of service was ever filed by Plaintiff.

## LEGAL ARGUMENT

### POINT I

**THIS ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENCY OF SERVICE PURSUANT TO 12(b)(2), (4,) AND (5)**

This case should be dismissed because Plaintiff's service of process is nonexistent as to Mr. McCarthy and void as untimely and defective as to the City.  When a defendant raises a question concerning the court's power to entertain the action (i.e., jurisdiction), the burden of proof with respect to that issue falls on the plaintiff." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 n.10 (3d Cir. 1982) (citation omitted).

"The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter <u>and the parties</u>."  <u>Insurance Corp. of Ireland, Ltd. v. Comnaunie des Bauxites de Guinee</u>, 456 U.S. 694, 701 (1982) (emphasis added).  "Personal jurisdiction, too, is 'an essential element of the jurisdiction of a district ... court,' without which the court is 'powerless to proceed to an adjudication.'"  <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 584 (1999) (citation omitted) (alterations in original).  "The failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case."  <u>Ayres v. Jacobs & Crumplar. PA.</u>, 99 F.3d 565, 569 (3d Cir. 1996).

Federal Rule of Civil Procedure 4 sets forth the procedure by which a court gains personal jurisdiction over a defendant.  <u>Id.</u> at 568.  Rule 4(c)(1), which states how service must be made, states that a "summons must be served with a copy of the complaint." Determining whether to dismiss an action for failure to properly serve process is two-pronged analysis.  <u>McCurdy v. Am. Bd. of Plastic Surgery</u>, 157 F.3d 191, 196 (3d Cir. 1998).  Under the first step, dismissal can be avoided by a showing of good cause.  <u>MCI Telecommunications Corp. v. Teleconcepts, Inc. ("MCI")</u>, 71 F.3d 1086, 1096 (3d Cir. 1995).  Under the second prong, a court "must consider whether any other factors warrant extending time even though good cause was not shown."  <u>Veal v. United States</u>, 84 F. App'x 253, 256 (3d Cir. 2004).

Under the federal framework for service of process, Plaintiff's Complaint should be dismissed with prejudice. Plaintiff has failed to serve the Newark Defendants within the time required. Plaintiff has not articulated any good cause for this failure, given that the Court has already extended an extra opportunity to comply with the rules. Finally, there are no further considerations justifying an extension because Plaintiff has displayed a pattern of flouting court deadlines and engaging in half-hearted and dilatory attempts at service. Although this failure would normally justify only dismissal without prejudice, the fact that the statute of limitations has run renders the dismissal as one with prejudice.

A.  <u>Plaintiff Has Not Served the Newark Defendants</u>

The Complaint should be dismissed because there is no personal jurisdiction over the Newark Defendants, no proper service, and with respect to any attempted service of process, process was defective. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." <u>Omni Capital Int'l v. Rudolf Wolff & Co.</u>, 484 U.S. 97, 104 (1987), <u>superseded by statute on other grounds</u>.

Rule 4(e) states that an individual is served by (1) effecting personal delivery of process, (2) leaving a copy of process with an adult at the defendant's dwelling or usual place of abode, (3) delivering a copy to an authorized agent, or (4) by following State

law governing service of process,. Fed. R. Civ. P. 4(e)(1), (2)(A)-(C). State law mirrors the first three above-referenced methods of service. NJ Ct. R. 4:4-4(a)(1). As to public bodies like the City, state law requires the same three methods of service, but "on the presiding officer or on the clerk or secretary thereof." NJ Ct. R. 4:4-4(a)(8). Federal Rule 4(j) states that a local government entity can be served by delivering process to the chief executive officer or by complying with State law governing service of process. Fed. R. Civ. P. 4(j)(A)-(B). None of these rules authorize service by facsimile.

Federal Rule 4(c)(1) also states "plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Rule 4(m), in turn, provides as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Accordingly after the lapse of the time limit for service (the "Service Period") provided by Rule 4(m), the summons expires and becomes void and unable to confer personal jurisdiction. See In re Campbell, 105 B.R. 19, 21 (B.A.P. 9th Cir. 1989) ("Because the summonses had expired, the service of the summonses and the complaints was defective."); accord Khorozian v. McCullough, 186 F.R.D. 325, 328 (D.N.J. 1999) (finding that summons served on defendants was void because, among other things, it was not served

until after the lapse of Service Period); <u>Cikraji v. Vickers</u>, No. 3:09CV066, 2010 WL 554438, at *12 (S.D. Ohio Feb. 16, 2010) (dismissing case for lack of personal jurisdiction where service was made after the Service Period with no explanation of the delay, no leave sought for an extension of the time within which to serve process, and no showing of good cause).

Here, Plaintiff has not served Mr. McCarthy at all.  Plaintiff notified the City of this suit through facsimile, which does not constitute proper service.

Even if process had been delivered in a proper manner to the City, there would still be no proper service because the summons was defective.  The summons expired after 90 days.  Plaintiff failed to obtain and serve a freshly issued summons, as he was required to do under Rule 4(m).

On account of the deficiencies in Plaintiff's attempt at service, the Court does not have personal jurisdiction over the Newark Defendants, and the matter should be dismissed. Furthermore, because the statute of limitations has already passed (for the reasons stated in more detail below), any dismissal will necessarily be with prejudice.

<u>B.</u>   <u>Plaintiff Has Not Shown Good Cause for Lack of Service</u>

The Complaint should be dismissed for failure to serve the Newark Defendants within 90 days of the filing of the Complaint with a valid summons.  Under Rule 4(m), a "district court [is] thus required to dismiss [an] action if process [is] not served within

[9]0 days of the filing of the complaint unless [the plaintiff can] show good cause for the delinquency." MCI Telecommunications Corp. v. Teleconcepts, Inc. ("MCI"), 71 F.3d 1086, 1096 (3d Cir. 1995) (decided before amendment of Service Period from 120 days to 90 days). Good cause "requires 'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'" Id. at 1097. "[C]ourts have considered three factors in determining the existence of good cause: (1) reasonableness of plaintiff's efforts to serve (2) prejudice to the defendant by lack of timely service and (3) whether plaintiff moved for an enlargement of time to serve." Id. (citations omitted).

In MCI, the plaintiff served the defendant but did not do so until "well over a month after the [Service Period] prescribed by Rule." 71 F.3d at 1091, 1096. The district court declined to dismiss the matter for untimely service because there was no prejudice to the defendant. Id. The Third Circuit ruled that "[a]lthough the district court felt that [the defendant] had not been prejudiced by the late service, absence of prejudice alone can never constitute good cause to excuse late service." Id. at 1097. The appellate court held that "while the prejudice may tip the 'good cause' scale, the primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." Id.

Even though (1) service was made only one month after the Service Period, (2) service at the initial address that plaintiff

knew of was unsuccessful through no fault of plaintiff, and (3) there was no prejudice to the defendant, the Third Circuit found that there was no good cause because (a) service was not made for "over three months after it learned of a new address at which defendant could be served"; and (b) there was no explanation why plaintiff "never filed a motion to enlarge the time to serve." Id.

Here, Plaintiff has delayed in serving the Newark Defendants for over six months with no explanation. Stated differently, Plaintiff allowed one and a half Service Periods to elapse before attempting service on the City, and he has allowed two Service Periods to elapse and still has not served Mr. McCarthy. Plaintiff never moved for an extension and never requested an additional summons. While Plaintiff proffered an explanation for the first four-month delay, Plaintiff has given no justification for continuing to delay an additional two months in violation of this Court's lawful order. Even with respect to the initial four-month delay, Plaintiff never intimated that he was unable to afford a process server or otherwise unable effect service within a reasonable time. Moreover, the Court expressly required Plaintiff to serve all defendants by December 5. Instead, Plaintiff has served no defendants and has provided no explanation for this failure. The only attempt at service was patently non-compliant with the federal rules and was effected on the very last day required by the Court. Under these facts, there is undoubtedly no good cause, and the matter should be dismissed.

C.   No Other Factors Warrant an Extension of Time to Serve

Under the second prong of the test under Rule 4(m), "a court is to consider several factors, including whether the statute of limitations would foreclose the plaintiff from re-filing, whether the defendant attempted to evade service, and any other relevant equitable considerations." Mathies v. Silver, 450 F. App'x 219, 222 (3d Cir. 2011).   In this respect, the mere fact that the statute of limitations has run, does not foreclose the judge's authority to dismiss a case.   Id. at 222-23.

Moreover, "the running of the statute on the date the original complaint was filed causes [a court] to view that factor in a light less favorable to plaintiff than might otherwise be the case." McCurdy, 157 F.3d at 196.   In fact, the applicability of the statute of limitations can be viewed in favor of a defendant as a factor favoring dismissal, when plaintiff's conduct has been dilatory in nature.   Mathies, 450 F. App'x at 223 ("In the District Court's view, it would be unfair to impose upon Dr. Silver further delays so that Mathies could complete service, as well as the burden of defending a claim that Mathies did not bring to Silver's attention until . . . after the statute of limitations began to run.").

Furthermore, evidence that a plaintiff's attempt at effecting service has been "'half-hearted and dilatory'" justifies dismissing the action rather than extending time for service.   McCurdy, 157 F.3d at 196.   Accordingly, where a plaintiff did not serve

defendant for a substantial time after the statute of limitations had run, the court dismissed the case because of the compelling policy interests served by the statute of limitations. Mathies, 450 F. App'x at 222-23. Similarly, where a plaintiff's complaint was filed on the last day of the statute of limitations period, and service of process for the complaint was effected twenty days late, while service of process for the amended complaint was effected four days late, the court dismissed the action, holding, "justice also requires that the merits of a particular dispute be placed before the court in a timely fashion." McCurdy, 157 F.3d at 197.

Here, Plaintiff has established a pattern of repeatedly waiting until the last possible moment to comply with court rules, and she has repeatedly blown court deadlines as a result. Plaintiff waited until the last day of, what she undoubtedly perceived as the statute of limitations period for a malicious prosecution claim, before filing her complaint. The limitations period for her remaining claims had been expired for over a year by the time the Complaint was filed, and for the reasons discuss below in point two, even the statute of limitations for her malicious prosecution had run by the time of the filing of the complaint.

Similarly, although the summons was issued the very next day, Plaintiff allowed five months to elapse with no attempt to serve the Newark Defendants. Only four of those months came with an explanation, and that explanation was not given until the notice of call for dismissal was issued by the Clerk. It was only then that

the Plaintiff paid any attention to this matter.  Even then, the Clerk requested a response before the return date of the motion to dismiss for failure to prosecute, and Plaintiff responded on the return date.  Nonetheless, the Court graciously allowed Plaintiff until December 5 to serve the Defendants.

In the end, Plaintiff's only attempt at service was the definition of "'half-hearted and dilatory.'" McCurdy, 157 F.3d at 196.  Plaintiff faxed the summons and Complaint at approximately 2pm on the end date identified by the Court.  Moreover, Plaintiff failed to ever request a new summons, and the summons used was ineffective and expired.  No service appears to have been attempted as to Mr. McCarthy whatsoever.  The Newark Defendants were not evading service.  The Newark Defendant's place of business is no secret.  There were no complications involved in serving the Newark Defendants.

Under these facts, Plaintiff has been unjustifiably dilatory and half-hearted in trying obtain personal jurisdiction over the Newark Defendants.  Moreover, as the Complaint fails to identify any Newark officers as being involved in any improper conduct, the interest of justice favors dismissal as to the Newark Defendants. Finally, as almost four years have now passed since the events alleged in the Complaint, the City is prejudiced in that it does not know what officers or US marshals were involved, and any such witnesses may now be retired and/or unavailable.

17

## POINT II

### PLAINTIFF'S CLAIMS ARE TIME-BARRED

Even if the Court did have personal jurisdiction over the Newark Defendants, the case should still be dismissed for failure to state a claim for which relief can be granted. All of the claims are time-barred by the applicable statute of limitations. The TCA claims are additionally time-barred for failure to file a notice of claim. Furthermore, Plaintiff is not entitled to punitive damages as a matter of law.

This matter is ripe for dismissal pursuant to Rule 12(b)(6). A 12(b)(6) motion serves an important role in the litigation process in that it "streamlines litigation by dispensing with needless discovery and factfinding." Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). A court can "dismiss a claim on the basis of a dispositive issue of law." Neitzke, 490 U.S. at 326. "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." Id. at 327.

A complaint may be dismissed with prejudice where any proposed amendments would be futile and unable to make the claim plausible. See Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000) ("Among the reasons for denying leave to amend [is] futility. . . . [F]utility of an amendment may

only serve as a basis for denial of leave to amend when the proposed amendment is frivolous or advances a claim that is legally insufficient on its face.").

On a motion to dismiss, courts may "consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Institutional Investors Group v. Avaya, Inc., 564 F.3d 242, 252 (3d Cir. 2009) (alterations in original) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322(2007)) (internal quotation marks omitted). A court may also review documents that are integral to the complaint. Syncsort Inc. v. Sequential Software, Inc., 50 F. Supp. 2d 318, 325 (D.N.J. 1999) ("Documents attached to a motion to dismiss must be explicitly relied upon or integral to the complaint or counterclaim of the nonmovant.").

Information relating to the filing of a notice of claim is integral to a complaint alleging tortious violations by a municipality. See Ingram v. Twp. of Deptford, 858 F. Supp. 2d 386, 400 (D.N.J. 2012) ("The Plaintiff's complaint does not allege that she filed [a notice of claim]. Therefore, the Plaintiff's complaint fails to state a claim . . . and should be dismissed."). The certification of Mr. Shittu is properly before the Court because information relating to Plaintiff's failure to file a notice of claim is integral to the Complaint. Furthermore, the Certification illustrates that any dismissal for failure to file a notice of

19

claim should be with prejudice, as no notice of claim was ever filed.

The City seeks dismissal of the Complaint and any future futile amended complaints that Plaintiff may file.  Plaintiff seeks damages, including punitive damages, against the Newark Defendants as follows: (1) under Count Four in violation of the NJCRA, false arrest, excessive force, negligently creating a risk of injury or death to Plaintiff, unlawful search and seizure, malicious prosecution, denial of equal protection (for the interrogation after being arrest), negligent training and supervision, and a Monell claim;[1] (2) under Count Two in violation of § 1983, a Monell claim against the City; (3) under Count Three contrary to the NJCRA, unlawful interrogation in violation of her procedural due process rights by the Newark Defendants; (4) under Count Five in violation of the TCA, false arrest and imprisonment; and (5) under Count Six in violation of the TCA, conspiracy to commit false arrest and malicious prosecution.[2]

Admittedly, Counts Five and Six do not explicitly reference the TCA, and Counts Three and Four also reference the New Jersey Constitution.  However, Plaintiff alleges that relief is warranted because of tortious conduct under State law and references the

---

[1] Count One is only applicable to the US Marshals under § 1983.  To the extent it was intended to apply to the Newark Defendants, the Count is deficient for the same reasons as Count Four, which alleges the same conduct under the analogous NJCRA.
[2] Although the heading for this Count references federal and state civil conspiracy, there are no allegations indicating that the conspiracy to commit state torts is based in federal law.

availability of punitive damages under a State statute, N.J.S.A. 2A:15-5.10, et seq. Compl. ¶¶ 53-68.  N.J.S.A. 2A:15-5.10, et seq., is inapplicable in this matter because the tort allegations automatically fall under the TCA.  Myers v. Medford Lakes Bd. of Educ., 199 N.J. Super. 511, 515 (App. Div. 1985) ("[A]part from the [TCA] no tort cause of action lies against a public entity of this state.").  Conversely, the TCA does not apply to constitutional or civil rights violations.  McGuire v. Twp. of Waterford, No. A-3196-05T5, 2007 WL 598666, at *6 (N.J. Super. Ct. App. Div. Feb. 28, 2007) ("The New Jersey Tort Claims Act does not apply to constitutional violations or civil rights violations.").

Rather, the civil rights and constitutional violations fall under the NJCRA.  Harley v. Warren, No. CV 13-7656(JMV), 2016 WL 6133830, at *6 (D.N.J. Oct. 20, 2016) ("The New Jersey Civil Rights Act is analogous to 42 U.S.C. § 1983 in that it creates a private right of action for violation of civil rights secured by the New Jersey Constitution, the laws of the [S]tate of New Jersey, and the Constitution and laws of the United States.").  Thus, Plaintiff's NJ Constitutional claims are only cognizable under the NJCRA.

For the reasons stated below, Plaintiff's claims, under § 1983, the NJCRA, and the TCA, are barred as a matter of law.

A.   Plaintiff Is Not Entitled to Punitive Damages

As an initial matter, Plaintiff improperly requests punitive damages against the Newark Defendants.  Plaintiff is not entitled to punitive damages against the Newark Defendants.  In particular,

Plaintiff requests punitive damages under § 1983, the NJCRA, and the TCA.

The Newark Defendants cannot be held liable for punitive damages as a matter of law under the TCA, § 1983, or the NJCRA. Joyce v. City of Sea Isle City, No. CIV. 04-5345RBK, 2008 WL 906266, at *25 (D.N.J. Mar. 31, 2008) ("Municipalities are immune from punitive damages on § 1983 . . . claims."), on reconsideration in part sub nom. on other grounds, 2008 WL 2875456 (D.N.J. July 23, 2008); Mauls v. Chain, 239 F.Supp.2d 486, 508 (D.N.J. 2002) ("[T]he TCA expressly bars recovery of punitive damages against public entities." (quoting N.J.S.A. § 59:9-2(c)); Matheny Sch. & Hosp. v. Borough of Peapack & Gladstone, No. CIV.A. 13-6802 MAS, 2014 WL 4215453, at *3 (D.N.J. Aug. 25, 2014) ("[T]he New Jersey Civil Rights Act does not authorize municipal liability for punitive damages.").

B.   The Tort Claims Are Time-Barred by the TCA

Plaintiff's TCA claims of false arrest and malicious prosecution must be dismissed because of the failure to file a notice of claim with the City.  Notice was required within 90 days of each purportedly tortious action identified in the Complaint. See N.J.S.A. §§ 59:8-3, 59:8-8; Feinberg v. State D.E.P., 137 N.J. 126, 134 (1994); Beauchamp v. Amedio, 164 N.J. 111, 121-22 (2000) ("[A] claimant is 'forever barred from recovering against a public entity or public employee' when the claimant has not provided notice within the time required." (citations omitted)).

Plaintiff has not alleged that he filed a timely notice of claim; thus any non-constitutional state claims should be dismissed. <u>Ingram</u>, 858 F. Supp. 2d at 400 ("The Plaintiff's complaint does not allege that she filed [a notice of claim]. Thus, Plaintiff's complaint fails to state a claim . . . and should be dismissed."). As Plaintiff in fact failed to file any notice, his claims should be dismissed with prejudice. Certif. Shittu.

C.   <u>The Complaint Is Barred by the Statute of Limitations</u>

All of Plaintiff's claims are time-barred under the applicable statute of limitations. Preliminarily, a claim under the NJCRA is analyzed the same as a claim under § 1983. <u>See</u> <u>Trafton v. City of Woodbury</u>, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983.").

The statute of limitations for § 1983 and NJCRA claims is the two-year period for personal injury torts, regardless of whether the specific underlying tort may have a longer or shorter limitations period. <u>See</u> <u>Dique v. New Jersey State Police</u>, 603 F.3d 181, 185 (3d Cir. 2010); <u>accord</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 384 (2007); <u>Aleynikov v. McSwain</u>, No. 15-1170 (KM), 2016 WL 3398581, at *4 (D.N.J. June 15, 2016). Similarly, under the TCA, "all of plaintiff's state law claims . . . , including plaintiff's malicious prosecution claim, are subject to the Act's two-year statute of limitations." <u>Michaels v. State of N.J.</u>, 955 F. Supp. 315, 326 (D.N.J. 1996) (citing N.J.S.A. § 59:8-8(b)).

"Actions grounded on violation of § 1983 based upon police

action toward criminal suspects, <u>such as search and seizure, arrest and interrogation</u>, are 'presumed to have accrued when the action actually occurs.'" <u>Freeman v. State</u>, 347 N.J. Super. 11, 22 (App. Div. 2002) (emphasis added); <u>accord</u> <u>Wallace</u>, 549 U.S. at 391 ("The cause of action accrues even though the full extent of the injury is not then known or predictable." (citations omitted)).

It thus follows that while a malicious prosecution claim generally accrues when criminal proceedings are favorably terminated, where that claim is based on police action toward a criminal suspect, the date of the police action will be the date of accrual, unless Plaintiff alleges a chain of causation between the arrest and subsequent incarcerations and unfavorable decisions. <u>Id.</u> at 23-25.

"It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment." <u>Id.</u> at 25 (citation omitted) (internal quotation marks omitted). The same is true of malicious prosecution claims under state law. <u>Seidel v. Greenberg</u>, 108 N.J. Super. 248, 264 (Ch. Div. 1969) ("[I]n conventional malicious prosecution cases, . . . the prosecution of plaintiff . . . by the intervening and independent acts of <u>law enforcement authorities who filed the complaint</u> . . . should insulate defendant." (emphasis added)). "[I]ntervening decisions of prosecutor, grand jury, judge, and jury supervene." <u>Hector v. Watt</u>, 235 F.3d 154, 163 (3d Cir. 2000), (Nygaard, J

concurring) (citing <u>Barts v. Joyner</u>, 865 F.2d 1187, 1195 (11th Cir.1989)), <u>as amended</u> (Jan. 26, 2001).

Here, all of the events depicted in the Complaint occurred in 2013. Therefore, the Complaint was required to be filed in 2015. As the Complaint was not filed until 2016, all of Plaintiff's claims are time-barred by the statute of limitations for § 1983, NJCRA, and TCA claims. To the extent Plaintiff believes that her malicious prosecution claims are not barred because they accrued on June 30, 2014, Plaintiff is mistaken.

Plaintiff has not alleged a chain of causation as to the Newark Defendants, and the claim arises from an officer's arrest; therefore, the malicious prosecution claim accrued on the date of arrest in 2013 and is time-barred. Moreover, any chain of causation would have been broken by the independent judgment of the New Jersey State Trooper who filed the criminal complaint, and the grand jury that returned an indictment against Plaintiff.

### POINT III

#### COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM

Even if Plaintiff's claims were not time-barred, she has not stated any plausible claims against the Newark Defendants under the NJCRA, TCA, or § 1983. There are no well-pleaded allegations that the Newark Defendants engaged in any wrongdoing. All of the allegations appear to implicate the New Jersey State Troopers and the US Marshals.

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), sets the

standard for a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009). "Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016).

"First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" Id. (citations omitted) (alterations in original). "Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" Id. (citations omitted). Stated differently, "the factual and legal elements of a claim should be separated." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). Under the third prong, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Connelly, 809 F.3d at 787 (citations omitted) (alterations in original).

"Courts ruling on Rule 12(b)(6) motions may take judicial notice of public records." Anspach v. City of Phila., 503 F.3d 256, 273 n.11 (3d Cir. 2007). Generally, "[a] court may take judicial notice of an adjudicative fact if that fact is not subject to reasonable dispute. . . . [and a] judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Werner

v. Werner, 267 F.3d 288, 295 (3d Cir. 2001) (footnote omitted) (citations omitted).

Here, the City's motion is accompanied by documents and information that are a matter of public record, integral to the Complaint, or both.  It cannot reasonably be disputed, and it is a matter of public record, that Mr. McCarthy was not employed with the City during the events depicted in the Complaint.  Therefore, Plaintiff's failure to make any specific allegations as to Mr. McCarthy, warrant not simply a dismissal, but a dismissal with prejudice.

In fact, all claims against the Newark Defendants should be dismissed because, other than legal and vague conclusions about conspiracy implying that the City is an agent of the State of New Jersey, the Complaint contains no well-pleaded allegations that the Newark Defendants or the City's employees were in any way involved in the events depicted by the Complaint.

The Newark Defendants can only be held liable for a specific improper custom or policy that results in a constitutional violation by the City's employees.  The Complaint identifies neither a specific policy, a specific custom, nor a City employee who committed a constitutional violation.

A.   No Allegations of Involvement by the Newark Defendants

Plaintiff's § 1983, NJCRA, and TCA claims must be dismissed because Plaintiff has failed to allege personal involvement, specific actionable polices and customs, or well-pleaded

allegations that the Newark Defendants engaged in wrongdoing.

Here, the facts alleged in the Complaint fail to support any entitlement to relief as against the Newark Defendants. The Complaint does not even point to a single Newark police officer who engaged in an unlawful arrest, search, interrogation, or prosecution. Rather all allegations are against the NJ State Troopers and the US Marshals, which are separate entities from the Newark Defendants.

Half-a-year after the filing of the Complaint, the Newark Defendants are confronted with a Complaint that has no connection to them other than the fact that it occurred within the City's territorial limits. The Complaint is especially implausible as to Mr. McCarthy, as he was working for the City of Chicago during the events of the Complaint. Plaintiff could have easily verified this by performing a Google search on Mr. McCarthy on the internet or accessing his Wikipedia page. Similarly, Plaintiff could have easily secured the police reports for the incident from the NJ State Troopers or made a FOIA request to obtain the identities of the law enforcement personnel involved in her arrest and prosecution. Instead, Plaintiff did nothing to research or develop her case for the three years between her arrest and the filing of the Complaint.

The Complaint, as it stands, does not allow the Newark Defendants to appropriately defend themselves in this case. Plaintiff has not adequately alleged the personal involvement of

the Newark Defendants with particularity.

This is especially true as concerns the allegations of denial of equal protection, excessive force, and negligent creation of a risk of danger to life or limb.  There are simply no specific allegations whatsoever that Plaintiff was discriminated against, that she was injured, or that any force was used against her during her arrest, other than that required by the US Marshals to put handcuffs on her.

B.   No Specific Allegations of Improper Policy or Custom

The NJCRA and § 1983 claims should be dismissed because they have not plausibly alleged a Monell claim.  In the context of a civil rights action, a municipality is liable only when the injury was caused by a policy, practice or custom adopted, either formally or in fact, in an area in which the municipality was authorized to act.  See K.D. v. Bozarth, 313 N.J. Super. 561, 571-73 (App. Div. 1998).

"To establish a claim against a policymaker . . . a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 223 (3d Cir. 2015) (analyzing pleading requirements under § 1983).  Plaintiff must allege facts showing that the City implemented "a policy or practice that creates an unreasonable risk of a constitutional violation . . . [coupled with a] failure to change the policy or employ corrective practices." Argueta v. U.S.

Immigration & Customs Enf't, 643 F.3d 60, 72 (3d Cir. 2011) (citations omitted) (internal quotation marks omitted) (emphasis added).

Moreover, the Complaint must allege the personal involvement of the defendants in the alleged wrongs. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Id. Appropriate particularity requires allegations of the time, place, and persons responsible. Id.

Finally, to properly allege a Monell claim, Plaintiff must allege either specific prior examples of an inappropriate custom or point to a specific improper policy. See, e.g., Chavarriaga, 806 F.3d at 223 (affirming dismissal of policy claim because there were no allegations as to any specific policy that required or encouraged unconstitutional conduct, and simply inferring an improper policy from allegedly unconstitutional conduct was tantamount to basing claim on respondeat superior and thus improper); Pelzer v. City of Philadelphia, 656 F. Supp. 2d 517, 532 (E.D. Pa. 2009) (allegations sufficient because complaint alleged that the city failed to adopt foot-pursuit and partner-splitting policies); Argueta, 643 F.3d at 74-77 (reversing denial of motion to dismiss because generalized allegations as to improper customs

(i.e. broad reference to "culture of lawlessness") were conclusory allegations not entitled to being assumed as true, and specific well-pleaded allegations referenced lawful proper customs and policies).

The Complaint fails to identify specific examples of a custom or specific policies or training regimen that the City failed to employ or correct. Nor does it allege any constitutional violation by the City's employees. Indeed, it is implausible that the Newark Defendants' policies, customs, and training regimen would have any effect on the actions of employees of separate and independent entities like the NJ State Troopers and US Marshals Service.

To the extent, Plaintiff was attempting to allege that there was a conspiracy between the Newark Defendants, the State of New Jersey, and the United States, Plaintiff still failed to allege any well-pleaded facts showing a conspiracy. Plaintiff simply alleged that one year before the events of the Complaint, the City of Newark may have agreed with the NJ State Troopers to focus their investigations on weapons trafficking. There are simply no other well-pleaded allegations relating to a conspiracy. Indeed, the remaining allegations referencing the Newark Defendants are either broad conclusions reciting legal elements or general allegations lumping all of the Defendants together. These vague and conclusory allegations are insufficient to meet the federal pleading standard and not entitled to a presumption of truth.

**POINT IV**

**THE NEWARK DEFENDANTS ARE ENTITLED TO IMMUNITY**

Even if there were plausible allegations that the Newark Defendants were agents of the State by reason of a conspiracy or otherwise, the Newark Defendants would then be entitled to the State's sovereign immunity. Similarly, even if Plaintiff did properly allege personal involvement by the Newark Defendants, all direct allegations of false arrest and malicious prosecution would not be actionable as to the Newark Defendants under the TCA because the Newark Defendants are immune to liability for the willful or malicious conduct of employees. The allegations under § 1983 and the NJCRA (except for the <u>Monell</u> claim) would similarly not be actionable because the Newark Defendants are immune to claims premised on <u>respondeat</u> <u>superior</u>.

A.   <u>The Newark Defendants Are Immune Under the TCA</u>

Plaintiff alleges that the Newark Defendants are liable for malicious prosecution and false arrest under the TCA in Counts Five and Six. The Newark Defendants are immune. The Newark Defendants cannot be held liable for the willful, criminal, or malicious misconduct of an employee under the TCA. N.J.S.A. § 59:2-10 ("A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, <u>actual malice</u>, or willful misconduct." (emphasis added)). As malice is an explicit element of malicious prosecution, and willful and criminal conduct are implied in the elements of false arrest, the Newark Defendants

32

are immune to those claims under the TCA.  Notably, there are no allegations of improper policy, training, interrogation, or supervision or of assault or excessive force, under the TCA.

**B.   The Newark Defendants Are Immune Under § 1983 and NJCRA**

Similarly, the Newark Defendants cannot be held vicariously liable for any claims under § 1983 and the NJCRA, as Plaintiff alleges in Counts Three and Four.  It is axiomatic that "there is no respondeat superior liability in civil rights actions under 42 U.S.C. §§ 1983 . . . ."  Tilli v. Ford, 566 F. App'x 105, 106 (3d Cir. 2014); accord Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) ("A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior."  (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978))).

By the same logic, a municipality is immune to negligent supervision and training claims, unless they arise from an improper custom or policy.  Mattern v. City of Sea Isle, 131 F. Supp. 3d 305, 318 (D.N.J. 2015) ("[M]unicipality's failure to train or supervise its police officers only becomes a basis for liability when 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" (citations omitted) (emphasis added)), aff'd sub nom., No. 15-3414, 2016 WL 4446066 (3d Cir. Aug. 24, 2016).

Here, to the extent Plaintiff's civil rights claims are based on allegations of respondeat superior or improper training and

supervision, the City is immune as a matter of law.

C.    The Newark Defendants Are Entitled to Sovereign Immunity

Finally, Plaintiff alleges § 1983 and NJCRA <u>Monell</u> claims against the Newark Defendants under Counts Two and Four for the alleged actions of the State Troopers.  If the Newark Defendants could be construed to be responsible for the actions of New Jersey State Police employees, the Newark Defendants would be entitled to sovereign immunity as to the <u>Monell</u> claims and all other civil rights claims.

"The breadth of state sovereign immunity protects not only states, but expands to protect entities and persons who can show that, even though the State is not the named defendant, 'the state is the real, substantial party in interest.'" <u>Bennett v. City of Atl. City</u>, 288 F. Supp. 2d 675, 679 (D.N.J. 2003).

"In <u>Fitchik v. New Jersey Transit Rail Operations, Inc.</u>, 873 F.2d 655 (3d Cir.1989), the Third Circuit held that the State is the real party-in-interest when 'the judgment sought would expend itself on the public treasury or domain, or <u>interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act</u>.'" <u>In re Camden Police Cases</u>, No. CIV. 10-4757 RBK/JS, 2011 WL 3651318, at *3 (D.N.J. Aug. 18, 2011) (emphasis added).  Under the <u>Fitchik</u> factors, courts have found that autonomous agencies are arms of the State, entitled to eleventh amendment immunity, when they performed actions for the benefit of the State government or on behalf of the

State government.   Id. at *4 (reaffirming principle that county prosecutors are arms of the State when carrying out law enforcement objectives).

By way of example, courts have found that county prosecutor's offices are arms of the State for sovereign immunity purposes, even though they are autonomous and self-regulating under Statute. Duncan v. Office of Passaic Cty. Prosecutor, No. CIV.A. 05-1931 ES, 2012 WL 1079471, at *2 (D.N.J. Mar. 30, 2012) ("Applying the Fitchik analysis, the Third Circuit held that county prosecutor's offices are agents of the state when performing classic law enforcement and investigative functions. And, Courts within the Third Circuit have consistently held that the Eleventh Amendment precludes federal suits against New Jersey county prosecutors, as well as their offices, arising out of their law enforcement functions on the basis that the real party in interest in these suits is the State of New Jersey.")

Similarly, even though municipal courts are not funded by the State (they are funded by municipalities) and operate with a significant degree of autonomy from the State, courts have found that municipal courts are arms of the State.   See, e.g., In re Raphael, 238 B.R. 69, 82 (D.N.J. 1999) ("[A] New Jersey Municipal Court is the State for purposes of sovereign immunity pursuant to the Eleventh Amendment."); Tennessee v. Lane, 541 U.S. 509, 527 (2004) ("[T]his case concerns the provision of judicial services, an area in which local governments are typically treated as 'arm

[s] of the State' for Eleventh Amendment purposes, and thus enjoy precisely the same immunity from unconsented suit as the States." (second alteration in original) (citations omitted)).   "The recurring theme that emerges from these cases is that county or municipal law enforcement officials may be State officials when they prosecute crimes or otherwise carry out policies established by the State, but serve as local policy makers when they manage or administer their own offices."   Carter v. City of Philadelphia, 181 F.3d 339, 352 (3d Cir. 1999).

Accordingly, if the Newark Defendants could be viewed as supervising and controlling NJ State Troopers and NJ State Police operations, they would be entitled to the same sovereign immunity that prevents from Plaintiff from suing the NJ State Police and the State of New Jersey directly.

## POINT V

### COMPLAINT FAILS TO STATE A PRIMA FACIE CLAIM

Plaintiff's state and federal claims must also be dismissed because they fail to state a prima facie claim.   All of Plaintiff's claims also fail because her arrest, search, and prosecution were supported by probable cause in the form of reliable information from the CI. Plaintiff's claims all arise from three transactions, a purportedly unlawful search, her allegedly false arrest, and her ostensibly malicious prosecution.   However, none of these transactions are illegal because they are all supported by probable cause.   Therefore, the Complaint must fall.

36

Additionally, the NJCRA claim for denial of due process is not actionable because that claim is unavailable under the NJCRA, whereas the malicious prosecution claim also fails because there is no allegation showing a chain of causation.

A.   Procedural Due Process Claim Is Not Viable

Plaintiff alleges a procedural due process denial of equal protection claim based on her alleged unlawful interrogation in April 2013, after being arrested.  Procedural due process claims are not actionable under the NJCRA.  Mattson v. Aetna Life Ins. Co., 124 F. Supp. 3d 381, 390 (D.N.J. 2015) ("[A] procedural due process claim cannot be brought under the NJCRA."), aff'd sub nom. Mattson v. AETNA Life Ins. Co., No. 15-3255, 2016 WL 3440447 (3d Cir. June 23, 2016).  To the extent the claim is brought under § 1983, there is no allegation of any discrimination or discriminatory intent, and the interrogation was lawful because the preceding arrest was supported by probable cause.

B.   All Claims Are Barred by the Presence of Probable Cause

All of the claims fail to state a prima facie claim because there is probable cause.  There is probable cause because Plaintiff has alleged that her arrest was based on identification by a confidential informant.  "Probable cause to arrest can be based on the statement from a witness or informant." Wildoner v. Borough of Ramsey, 162 N.J. 375, 390 (2000).  Quite simply, "when a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest."

Mobilio v. Div. of Law & Pub. Safety of New Jersey, 413 F. App'x
520, 525-26 (3d Cir. 2011) (quoting Sharrar v. Felsing, 128 F.3d
810, 818 (3d Cir.1997) (internal quotation marks omitted)).

"[I]t is irrelevant to the probable cause analysis what crime
a suspect is eventually charged with, or whether a person is later
acquitted of the crime for which she or he was arrested." Wright
v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005).  There is
simply "no constitutional principle 'that a police officer who
reasonably believes he has probable cause must conduct further
investigation or risk a subsequent charge of failing to exercise
due diligence.'" Sanducci v. City of Hoboken, 315 N.J. Super. 475,
482 (App. Div. 1998)

Here, Plaintiff alleges a CI identified Plaintiff as an arms
dealer to the NJ State Police, and conducted a controlled, State-
Police-Supervised transaction with a person that the State Police
believed to be Plaintiff.  This is presumptively sufficient
establish probable cause.  Neither the fact that the State Police
may have made a mistake as to Plaintiff's identity, nor the fact
that Plaintiff was acquitted, negates the existence of probable
cause.

C.   Malicious Prosecution Claim Fails to Allege Chain of Causation

Finally, the malicious prosecution claim is additionally
fatally deficient because Plaintiff has not alleged a chain of
causation.  It is well-established that "[w]hen claims of malicious
prosecution are brought against an arresting officer, it must also

be shown that the chain of causation was not broken by the 'intervening exercise of independent judgment' by a judge or prosecutor." Rankines v. Meyrick, No. 14-1842 (RMB/AMD), 2016 WL 545134, at *7 (D.N.J. Feb. 10, 2016).

"It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment." Freeman, 347 N.J. Super. at 25 (citation omitted) (internal quotation marks omitted); accord Seidel v. Greenberg, 108 N.J. Super. 248, 264 (Ch. Div. 1969) ("[I]n conventional malicious prosecution cases, . . . the prosecution of plaintiff . . . by the intervening and independent acts of law enforcement authorities who filed the complaint . . . should insulate defendant."). "[I]intervening decisions of prosecutor, grand jury, judge, and jury supervene." Hector v. Watt, 235 F.3d 154, 163 (3d Cir. 2000), (Nygaard, J concurring) (citing Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir.1989)), as amended (Jan. 26, 2001).

Indeed, the "[f]iling of a criminal complaint immunizes investigating officers ... because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." Aleynikov, 2016 WL 3398581, at *12 (alterations in original) (internal quotation marks omitted) (citations omitted).

Here, the criminal complaint and subsequent indictment of Plaintiff represent independent judgment and breaks the chain of

39

causation for any malicious prosecution claim against the Newark Defendants for the same reasons stated above in the discussion of the statute of limitations for malicious prosecution.

## **CONCLUSION**

For the above reasons, the City of Newark respectfully requests that the Court grant this motion to dismiss.

Respectfully submitted,

**WILLIE L. PARKER, CORPORATION COUNSEL**
*Attorney for Newark Defendants*


By:__*s/Wilson D. Antoine*_____
        Wilson D. Antoine, Esq.
        Assistant Corporation Counsel

Dated: January 9, 2017